PETER CAPONI, PETITIONER-APPELLANT, v. FEDERAL IN-
DUSTRIES, A DIVISION, RESPONDENT-APPELLEE.

Essex County Court
Law Division

Decided May 28, 1958.

318

*Messrs. Marinello, Cundari & Soriano,* attorneys for petitioner-appellant (*Mr. Ralph G. Conte,* of counsel).

*Mr. Edward B. Meredith,* attorney for respondent-appellee.

GIULIANO, J. C. C.   This is an appeal from a denial of a motion to increase a counsel fee entered January 7, 1958 by the referee in the Division of Workmen's Compensation. The controversy as to the amount of the counsel fee awarded

the petitioner's attorney arises from the following fact situation: The petitioner was injured by accident arising out of and in the course of his employment with the respondent on September 18, 1956. Subsequent to this injury, medical treatment was supplied by the respondent and temporary disability at the rate of $30 weekly was paid from September 18, 1956 to July 15, 1957, a period of some 43 weeks. (On June 18, 1957 the respondent caused Dr. Saul I. Firtel, an orthopedist, to examine the petitioner). A formal claim petition alleging orthopedic disability was filed on July 23, 1957 and was served upon the carrier on August 7, 1957. On this latter date the respondent executed an answer which stated that the resultant permanent disability to the petitioner's right arm was 60%. Upon the cessation of temporary disability payments the respondent commenced the payment of permanent compensation; the first of these checks was issued July 19, 1957, and regular monthly checks were sent thereafter. The petitioner returned to work on August 5, 1957.

The case was originally set down for pretrial on October 27, 1957, at which time the petitioner sought to amend the claim petition to include neurological disability, which was informally allowed. On November 14, 1957 the petitioner was examined by the respondent's neurologist and for that reason the matter was then rescheduled for pretrial on November 22, 1957. At the time of this pretrial a consent judgment pursuant to *N. J. S. A.* 34:15–22 was entered. Accordingly, there was a determination that the petitioner sustained a partial permanent disability of 70% of the right arm and 7½% of total permanent disability, of which 2½% represented an orthopedic disability as a result of scarring of the abdomen caused by a skin grafting operation, and 5% on a neurological basis. Therefore, the petitioner was awarded by the referee $30 per week for 251¼ weeks, which totaled $7,537.50. A counsel fee of $375 was awarded to the petitioner's attorney, of which $200 was to be paid by the respondent and $175 by the petitioner. At this hearing it was determined that the petitioner was entitled

to two additional weeks of temporary compensation. While the transcript of the pretrial proceeding does not expressly delineate the basis upon which this allowance of a counsel fee was made, it is manifest that it was based upon that part of the petitioner's recovery which exceeded the 60% of partial permanent disability admitted by the respondent in its answer of August 7, 1957. The petitioner's attorney then moved for an order increasing the counsel fee allowance, and argument on this motion was heard on January 7, 1958 by the same referee.

The making of an offer to pay compensation under N. J. S. A. 34:15–64 so as to limit the award of a fee to the petitioner's attorney to the amount of compensation in excess of the offer has been the subject of much judicial scrutiny. The language of the section of the statute which is the storm center of controversy reads, *inter alia*, as follows:

"* * * When, however, at a reasonable time, prior to any hearing compensation has been offered and the amount then due has been tendered in good faith or paid, the reasonable allowance for attorney fee shall be based upon only that part of the judgment or award in excess of the amount of compensation, theretofore offered, tendered in good faith or paid. * * *"

In *Seitz v. Singer Mfg. Co.,* 36 *N. J. Super.* 546 (*App. Div.* 1955), it was held that the tender of a check in the amount representing the first week of permanent disability compensation to the petitioner four days prior to the hearing could not be "deemed a *bona fide* offer to settle the matter within a reasonable time." *Id.,* 36 *N. J. Super.* at *page* 551. The purpose of the statute was clearly enunciated in *Davala v. American Bridge Co.,* 36 *N. J. Super.* 274 (*App. Div.* 1955), in which the court stated that the purpose of the 1952 amendment was "to afford greater protection to attorneys representing compensation claimants who may have invested substantial time and effort in a matter prior to the making of an offer by a respondent. * * *." *Id.,* 36 *N. J. Super.* at *page* 279.

The most recent case to concern itself with this problem is that of *Moore v. Magor Car Corp.,* 47 *N. J. Super.* 425

(*App. Div.* 1957), affirmed 25 *N. J.* 539 (1958). In that case the petitioner was injured on October 10, 1955. The respondent's eye specialist performed an operation on the injured eye of the petitioner in October of 1955 and, on December 16, 1955, the doctor reported to the respondent that the petitioner had a "100% schedule loss of vision and the prognosis for the return of vision is very poor." 47 *N. J. Super.* at *page* 428. The petitioner then filed a claim petition on February 10, 1956, which was served on the respondent on March 14 of that year. The respondent having received a report from its examining ophthalmologist ascribing loss of vision to the petitioner's eye at 100%, filed its answer on March 26, 1956 admitting that there was 100% loss of vision in the petitioner's eye. On March 21, 1956 the respondent, without any accompanying explanation, sent a check in the amount of $360 to the petitioner. The respondent contended that the admission in its answer and the sending of the check to the petitioner was a good faith tender at a reasonable time so that the petitioner's attorney was entitled to a fee only upon that part of the judgment in excess of the 100% permanent disability for the loss of the eye. The Appellate Division did not agree with this contention and stated:

"The bare acknowledgment of 100% of total disability in the answer did not amount to an offer. An offer should never have to be inferred under *N. J. S. A.* 34:15–64. And the check, even when considered together with the answer, did not clearly spell out a tender of payment on account of the full 150 weeks' compensation respondent well knew it was obliged to pay for an injury of this type, total in nature. It was not until the pretrial conference in July 1956 that respondent made a plain, unmistakable offer and tender. In our view, there was no reason for this delay. With the reports that were in hand, respondent should have come forward and tendered payment in accordance with the statutory schedule for the 100% loss of vision before petitioner retained an attorney and filed his claim petition." 47 *N. J. Super.* at *page* 430.

The court further went on to say that the date that the claim petition is filed is not necessarily in and of itself the initial date from which the period of "reasonable time"

begins to run. Of especial significance to the instant case is the Appellate Division's opinion that the tender of payment by the respondent was not clearly set forth. In this regard the court stated:

"* * * The check of March 21 followed, without accompanying explanation as to whether it represented the first 12 weeks of the scheduled permanent disability (150 weeks at $30) or *something less.* * * *" 47 *N. J. Super.* at *page* 434. (Emphasis added.)

On appeal to the Supreme Court, the judgment of the Appellate Division was affirmed. The Supreme Court, in reaching its decision, held that the 11-week delay between the cessation of temporary disability and the check of March 21 was unjustified and therefore an offer of permanent compensation was not made at a reasonable time. The court expressly declined to decide as unnecessary to the decision whether the admission in the answer of 100% disability of the eye and the sending of the March 21 check constituted a tender in good faith within the meaning of the statute.

■■ This issue is precisely the one, however, that is now before this court. In the case *sub judice,* unlike the situation in the *Moore* case, *supra,* there was no interruption of payments between the temporary disability compensation and the permanent compensation. In common with that latter case, however, the permanent compensation checks were not accompanied by an explanation as to the basis upon which the checks were sent. The respondent did not in any way make known to the petitioner in unequivocal terms that these checks were in payment of 60% permanent partial disability of the right arm. The petitioner should not be required to speculate as to the ultimate amount to be paid by the respondent. This court is of the opinion that a firm and definite offer is required under *N. J. S. A.* 34:15–64 so as to limit a fee to an attorney. The purpose of this statute is obviously to facilitate settlement and render unattractive the furtherance of a claim in the Division of Workmen's Compensation when a *bona fide* and reasonable offer has been made. This court fails to see how this

statutory purpose can be realized in the absence of an unequivocal and communicated offer.

It is argued that the admission in the respondent's answer of 60% disability of the petitioner's arm in conjunction with the sending of these checks constituted an offer. This court does not agree that this is so. Were subsequent events to show that the permanent disability of the petitioner was less than 60%, the respondent would amend his answer to conform to that evidence so as to incur liability only to that lesser extent. Thus, it would seem manifestly unfair to allow the respondent to utilize the 60% disability statement where the question of an attorney fee is involved and, in the event the medical proofs indicate that the petitioner's disability is less than that percentage, to incur liability at the lesser rate.

The statement of the Appellate Division in the *Moore* case, *supra,* that "an offer should never have to be inferred under *N. J. S. A.* 34:15–64," is, in the opinion of this court, an unexceptionable holding. In view of this holding and the factual situation that obtains in the case *sub judice,* this court finds that the respondent in the instant case failed to meet the requirements of an offer under this statute.

Finally, it is contended by the respondent that *N. J. S. A.* 34:15–16 (as amended effective January 1, 1957) prevents the making of an offer of permanent disability until the expiration of 26 weeks from the date of accident or a return to work, whichever is the earlier. It is submitted that this statutory interpretation on the part of the respondent is unfounded in view of the express provision contained in that statute to the effect that "* * * nothing herein contained shall prevent an employer or his insurance carrier from paying permanent disability compensation voluntarily prior to the expiration of the 26 week period."

For the foregoing reasons, it is the opinion of this court that the counsel fee should be calculated on the basis of the entire compensation award to the petitioner. Therefore an appropriate order may be submitted.